## UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF KENTUCKY
## FRANKFORT DIVISION

| | |
|---|---|
| KELSEY LYVERS on behalf of herself and other individuals similarly situated,<br><br>　　　　　　　　　　　　Plaintiff,<br><br>　　against<br><br>THE UNIVERSITY OF LOUISVILLE; SCOTT W. BRINKMAN, RANDALL J. BUFFORD, RAYMOND BURSE, JOHN E. CHILTON, ALFONSO CORNISH, SANDRA FRAZIER, DIANE MEDLEY, MARY R. NIXON, DIANE L. PORTER, JAMES M. ROGERS, DAVID SCHULTZ, and JOHN D. SMITH; and other affiliated entities and individuals,<br><br>　　　　　　　　　　　　Defendants. | Case No. 3:21-cv-000006-GFVT<br><br>**AMENDED CLASS ACTION COMPLAINT**<br><br>JURY TRIAL DEMANDED |

Named Plaintiff Kelsey Lyvers ("Plaintiff"), on behalf of herself and all others similarly situated, by their attorneys, brings this First Amended Class Action Complaint against Defendants, the University of Louisville, ("Louisville" and "University") and Scott W. Brinkman, Randall J. Bufford, Raymond Burse, John E. Chilton, Alfonso Cornish, Sandra Frazier, Diane Medley, Mary R. Nixon, Diane L. Porter, James M. Rogers, David Schultz, and John D. Smith in their capacity as members of the Board of Trustee of the University of Louisville ("The Board" collectively with Louisville "Defendants") , alleging the following upon information and belief, except for those allegations pertaining to Plaintiff, which are based on personal knowledge.

### **NATURE OF THE ACTION**

1.　　This class action is brought on behalf of Named Plaintiff Kelsey Lyvers and those similarly situated who paid tuition and fees for the Spring 2020 semester at the University of Louisville, and who had their educational experiences and class(es) moved to online learning.

2.　　As a result of Defendants' response to the Novel Coronavirus Disease 2019

("COVID-19"), Plaintiff and members of the Class did not receive the in-person benefits and services for which they bargained for in exchange for tuition and various fees paid.

3.      Plaintiff and Defendants entered into a legally authorized, written contract where Plaintiff would provide payment in the form of tuition and fees and Defendants would provide in-person educational services, experiences, opportunities, and other related services.

4.      On or around March 11, 2020 the University of Louisville, where Plaintiff Lyvers was enrolled, cancelled all in-person education and began transitioning to complete online education for at least two weeks, following Spring Break recess. On March 11, 2020 Louisville cancelled in-person classes through the remainder of the Spring 2020 semester. Similarly, at around the same time, all Louisville events, clubs, organizations and similar experiences and opportunities were cancelled.

5.      Defendants' failure to provide the services, for which tuition and the Mandatory Fees were intended to cover since approximately March 11, 2020, is a breach of the contracts and breach of the covenant of good faith and fair dealing between Defendants and Plaintiff and the members of the Class and is unjust.

6.      In short, Plaintiff and the members of the Class have paid for tuition for an on-campus, in-person educational experience, and all the benefits offered by a first-rate university, like the University of Louisville.

7.      Instead of receiving such benefits, Plaintiff was provided a materially different alternative, and that alternatives constitutes a breach of the contracts entered into by Plaintiff and the Class with Defendants.

8.      As to the Mandatory Fees, Plaintiff and the Class have paid fees for services and facilities which are simply not being provided. This failure also constitutes a breach of the contracts

entered into by Plaintiffs and the Class with the University.

9.      In the alternative, Plaintiff alleges that Defendants' retention of full tuition and full fees is unjust-without receiving the full educational services that were previously available and promised.

10.     Rather that offer partial refunds, credits, or discounts to students like Plaintiff and the Class and balance the financial difficulties associated with Covid-19, Defendants have instead elected to place the financial burden entirely upon its students by charging them full tuition and full Mandatory Fees when the services Defendants provided were materially different than the full educational opportunities, experiences, and services that Plaintiff and the Class bargained for, contracted for, and paid for.

11.     Plaintiff does not challenge Defendants' compliance with the Covid-19 orders that were in place in Kentucky – or its process for awarding degrees. Rather, Plaintiff challenges Defendants' decision to retain monies paid by students like Plaintiff and refuse to offer any refunds, provide and discounts, or apply any credit to Plaintiff and Class Members' accounts when Defendants failed to provide the in-person and on-campus services that were bargained for promised and agreed to.

12.     Notwithstanding any argument that Defendants had no choice but to transition to an online-only educational model with limited campus access due to government orders then in effect, there was no government or municipal order in place that required Defendants to retain the full amount of tuition and the full amount of fees from Plaintiff. And there is no argument that the retention of Plaintiffs' tuition and fees was done for the health and safety of students, faculty, staff or the public at large.

13.     Plaintiff and members of the Class seek and are entitled to a pro-rated refund of

Tuition and Mandatory Fees for the duration of the University's COVID-19 related closures for the in-person education and on-campus services and opportunities that Plaintiff and members of the Class have been denied.

**FACTS**

14.    Plaintiff and Class Members are individuals that were obligated to pay tuition and fees for the Spring 2020 semester.

15.    Defendants accepted Plaintiff's and Class Members' payments in exchange for in-person educational services, experiences, and opportunities as detailed in Defendants' marketing, advertisements, and other public representations.

16.    Based on the academic schedule, the Spring 2020 semester at Louisville commenced on or around January 6, 2020 and was scheduled to conclude on or around April 28, 2020.

17.    The University of Louisville charges tuition and fees on a semesterly basis, which varies depending on residential status, and were as follows for undergraduate students for Spring 2020:

| "In-Commonwealth" Students | "Out-of-Commonwealth" Students |
|---|---|
| $5,886/semester | $13,879/semester |
| $11,772/academic year | $27,758/academic year |

18.    Louisville's tuition and fees per credit hour for graduate students in Spring 2020 were as follows:

| "In-Commonwealth" Students | "Out-of-Commonwealth" Students |
|---|---|
| $6,500/semester | $13,557/semester |
| $13,000/academic year | $27,114/academic year |

19.    Louisville charged additional fees for undergraduate students, as follows:

| "In-Commonwealth" Students | "Out-of-Commonwealth" Students |
|---|---|
| Student Activity Fee - $16 per semester | Student Activity Fee - $16 per semester |
| Student Athletics Fee - $25 per semester | Student Athletics Fee - $25 per semester |
| Student Building Fee - $25 per semester | Student Building Fee - $25 per semester |
| Student Health Fee - $35 per semester | Student Health Fee - $35 per semester |
| Student Services Fee - $85 per semester | Student Services Fee - $85 per semester |
| University Facility Fee - $15 per semester | University Facility Fee - $15 per semester |
| Total: $201.00 | Total: $2o1.00 |

20.    University of Louisville charged additional fees for graduate students, which upon information and belief, are at least in part as follows:

| "In-Commonwealth" Students | "Out-of-Commonwealth" Students |
|---|---|
| Student Activity Fee - $16 per semester | Student Activity Fee - $16 per semester |
| Student Athletics Fee - $25 per semester | Student Athletics Fee - $25 per semester |
| Student Building Fee - $25 per semester | Student Building Fee - $25 per semester |
| Student Health Fee - $35 per semester | Student Health Fee - $35 per semester |
| Student Services Fee - $85 per semester | Student Services Fee - $85 per semester |
| University Facility Fee - $15 per semester | University Facility Fee - $15 per semester |
| Total: $201.00 | Total: $2o1.00 |

21.    University of Louisville represented that specific fees were assessed in exchange for the specific services offered by the University.

22.    Defendants detail the above fees as follows:

   a)  Student Activity Fee – "to increase the availability of student services and programming at UofL, thereby enhancing the educational experience for students;"[1]

   b)  Student Athletics Fee – "to help provide a structurally balanced budget for the Athletic Association…for extended library hours, promotion of additional university spirit programs, and provision of additional student tickets for

---

[1] https://louisville.edu/bursar/tuitionfee/student-activity-feev

basketball games;"[2]

c) Student Building Fee – "applied toward maintenance, debt service and renovation of the Student Activities Center;"[3]

d) Student Health Fee "To provide new health services and benefits not otherwise available to students…funded additional primary care services, initial psychiatric consultations, specialty care (dermatology, Ob/Gyn), health education programs and expanded office hours;"[4]

e) Student Services Fee – "provides student support services necessary for successful matriculation and enhanced retention of students;"[5]

f) University Facility Fee – "the fee was to assist in funding the Ralph Wright Natatorium. The state-of-the-art swimming and diving complex is available for student recreation, fitness and instruction. The revenue from this fee is applied toward the debt service payment for the natatorium."[6]

23.    Students attending the University of Louisville's "Online Campus," i.e. in online-only programs, are not charged any of the above-listed fees, evidencing that they are specific to traditional, on-campus students and assessed in exchange for services and access to facilities not available to online-only students.

24.    Plaintiff and members of the Class paid tuition and fees for in-person educational services, experiences, opportunities, and other related collegiate services for the entire semester.

25.    On or around March 11, 2020 Louisville announced that because of COVID-19

---

[2] https://louisville.edu/bursar/tuitionfee/student-athletics-fee
[3] https://louisville.edu/bursar/tuitionfee/student-building-fee
[4] https://louisville.edu/bursar/tuitionfee/student-health-fee
[5] https://louisville.edu/bursar/tuitionfee/student-services-fee
[6] https://louisville.edu/bursar/tuitionfee/university-facility-fee

they would suspend all in-person classes for the remainder of the Spring Semester 2020 beginning on or around March 18, 2020 and that all learning would transition to online.

26.     Defendants were unable to provide in-person educational experiences, services, and opportunities for approximately 50% of the Spring 2020 semester at University of Louisville.

27.     Prior to the suspension of in-person classes for the Spring 2020 semester, Plaintiff was involved in student activities and clubs, utilized campus facilities, and used the educational resources that the Louisville provided, all of which were provided in exchange for the fees paid for the semester. Plaintiff's involvements in all such activities and clubs was halted due Defendants' response to COVID-19.

28.     As a result of Defendants' closure, Defendants have not complied with their obligation to provide in-person educational services along with other experiences, opportunities, and services for which Plaintiff and the Class paid.

29.     Plaintiff and the Class did not enter into an agreement with Defendants for online only education, but rather sought to receive in-person education from Defendants' institution.

30.     Class members had the option to apply for online programs at a significantly discounted rates, but Class Members chose to pay increased tuition and fees for in-person education and experiences on Louisville's campus.

31.     Like at most universities, the awarding of course credit and course grades falls at least in part within the discretion of a student's relevant academic authority based on a student's performance in classes and examinations, among other factors.

32.     Plaintiff was thus contracting for the *means* to be awarded course credit and course grades.

33.     In other words, Plaintiff did not merely contract for course credit and grades;

7

rather, she contracted for educational services delivered on-campus and in-person, including course instruction and other academic services and facilities.

34.     Furthermore, by applying to, receiving admission to, and attending Louisville's physical campus, Plaintiff was contracting for services and opportunities provided by and on Louisville's campuses.

35.     Louisville treats its traditional, in-person degree programs as completely distinct from its online and distance education offerings, as evidenced by Louisville's identification of its traditional in-person educational offerings and its "Online & Distance Learning" as two entirely different campuses within the University.

36.     The fact that Plaintiff and the Class applied for admission to traditional academic programs offered on Louisville's physical campuses, rather than its "Online & Distance Learning Campus," demonstrates that Plaintiff and the Class were indeed contracting for in-person, on-campus educational instruction, services, facilities, and opportunities.

37.     The University accepted Plaintiff and the Class for admission and extended an offer for Plaintiff and the Class to enroll as students on Louisville's physical campuses, not its Online & Distance Education campus.

38.     The price for an online education is lower than what is paid for an in-person on campus education. The two education options are promoted and priced differently and have distinct admissions requirements.

39.     For example, the University of Louisville offered online only tuition for $539 per credit hour, or $6,468 for both in-commonwealth and out-of-commonwealth full-time, online-only undergraduate students per semester of 12 credit hours taken.

40.     In addition, the University of Louisville offered online tuition for $764 per credit hour, or $6,876 for both in-commonwealth and out-of-commonwealth full-time, online-only graduate students per semester of 9 credit hours taken.

41.     Louisville provided Plaintiff and members of the Class with materially different educational services and experiences similar to that of the online degree offerings, all while retaining the higher priced tuition and fees paid for in-person on-campus education and experiences.

42.     Had Plaintiff and the Class contracted for online education, they would have been assessed Online Course fees consistent with the University's policy prior to Fall 2020 of billing "Regular (non-online) Tuition" and "Online Course" tuition "separately and in addition to any regular (non-online) courses a student may be taking."[7]

43.     Plaintiff was not assessed "Online Course" tuition or fees for her courses in Spring 2020.

44.     Plaintiff and the Class's obligation to pay "Regular (Non-online) Tuition" reflects that the parties were contracting for "Regular" or "Non-online"—i.e. in-person—instruction, making it a fundamental assumption underlying the entire agreement.

45.     Students are required to sign a "Statement of Financial Responsibility" that acknowledges their obligation to pay tuition and fees to Louisville, evidencing their intent to be bound to pay tuition and fees.

46.     That "Statement of Financial Responsibility" incorporates, *inter alia*, mandatory

---

[7] "Tuition Rates 2019-2020, UNIVERSITY OF LOUISVILLE (available at: https://louisville.edu/bursar/tuitionfee/tuitionrates) (last visited Mar. 24, 2021).

"Consumer Information" disclosures that include a list of "Student Responsibilities," requiring students to "adher[e] to all other standards indicated in this document and elsewhere for university students," thereby incorporating all relevant University policies into the students' agreement with Louisville.

47.    In other words, while the Statement of Financial Responsibility represents an express intent to be bound to pay outstanding debts to Louisville, the terms of Plaintiff and the Class's written contract with Louisville are set forth in other documents.

48.    Students at Louisville, like Plaintiff, have been deprived if the opportunity for collaborative learning and in-person dialogue, feedback, and critique.

49.    Students, like Plaintiff, were denied access to facilities such as libraries, laboratories, computer labs, recreation centers, and study rooms, are integral to college education.

50.    Students, like Plaintiff, were denied access to activities offered by campus life foster intellectual and academic development and independence, and networking for future careers.

51.    Within its course catalog and the various descriptions of the courses offered Louisville promises hands-on experiences or instruction over 45 times.[8]

52.    On its website, Defendants market the University's on-campus experience and opportunities as a benefit to students.

53.    For example, the University provided students, like Plaintiff, with materials that reflected the following on-campus services, experiences, and opportunities.

---

[8] https://catalog.louisville.edu/undergraduate/archive/University_of_Louisville_UG_Catalog_2019-2020.pdf



### J.B. Speed School of Engineering

The J.B. Speed Building is part of the J.B. Speed School of Engineering and the Office of the Dean. Speed School students benefit from the individualized instruction of a small engineering college, coupled with the ample resources and activities of a major metropolitan university. The school's cooperative education program provides the opportunity to gain paid, hands-on engineering experience and become workforce-ready while earning a degree.

Programs

- Bioengineering
- Chemical Engineering
- Civil and Environmental Engineering
- Computer Engineering and Computer Science
- Electrical and Computer Engineering
- Industrial Engineering
- Mechanical Engineering

Features

- Academic classrooms
- Faculty offices
- Student advising offices
- Duthie Center
- City Cafe

### Ekstrom Library

The William F. Ekstrom Library is the main library on Belknap Campus. Built in 1981 and expanded in 2006, the library is a short walk from many academic buildings, the Speed Art Museum and the Student Activities Center.

Inside the library, students can enjoy regularly hosted campus talks and lectures at the Chao Auditorium. The UofL Writing Center, located off of the library's main lobby, offers assistance throughout the writing process to undergraduate and graduate students, faculty and staff.

Features

- Robotic retrieval system
- Recently renovated study spaces
- Computer workstations
- Archives and Special Collections
- The Anne Braden Center for Social Justice Research
- The Delphi Center for Teaching and Learning
- The McConnell Center
- The McConnell-Chao Archives
- Classroom and gallery space
- Starbucks
- Chao Auditorium
- University of Louisville Writing Center





**George Howe Red Barn**

The George J. Howe Red Barn is the epicenter of campus activity and hosts a variety of events throughout the year.

Originally used by the Caldwell Tank manufacturing operation, the Red Barn was founded in 1969 and is still used today by campus organizations for fundraisers, cookouts, concerts, competitions and award ceremonies.

Features

- Common grounds for students and campus visitors to enjoy
- Event space for campus organizations
- Conveniently located at the doorstep of the Student Activities Center



54.     However, that is not what students, including Plaintiff, received during the semesters affected by Covid-19.

55.     Defendants priced the tuition and Mandatory fees based on the in person educational services, opportunities and experiences it was providing on campus.

56.     Defendants have not made any refund of any portion of the tuition Plaintiff and the members of the Class paid for the semesters affected by Covid-19, and they have offered no discount, rebates, or refunds going forward.

57.     Defendants have not refunded any portion of the Mandatory Fees it collected from

Plaintiff and the members of the Class for the affected semester even though it closed or ceased operating the services and facilities for which the Mandatory Fees were intended to pay.

58.    Plaintiff and the Class members are therefore entitled to a pro-rated refund of the tuition and Mandatory Fees they paid for the Spring 2020 semester for the remaining days of that semester after classes moved from in-person to online and facilities were closed, as well as for other semesters impacted by COVID-19.

59.    Defendants' practice of failing to provide reimbursements for tuition and Mandatory Fees despite the materially different nature of the education and other experiences that it provided, and the reduced consideration associated with the fees, as alleged herein, violates the law, as well as, generally accepted principles of business conduct.

## JURISDICTION AND VENUE

33.    The Initial Complaint in this matter was filed in the Franklin County Circuit Court for the Commonwealth of Kentucky on December 22, 2020 with a docket number 20-CI-00985.

34.    On March 3, 2021, Defendants entered and served a Notice of Removal.

35.    Removal was based on 28 U.S.C. § 1331 "federal question jurisdiction."

## PARTIES

60.    Plaintiff Kelsey Lyvers was a graduate student during the Spring 2020 semester. The University of Louisville charged Plaintiff approximately $5,038 in tuition and fees during the Spring 2020 semester, not including parking. Plaintiff Lyvers has not received a refund and/or discount of tuition and fees paid to Defendants, despite the fact that Louisville has been shut down since on or about March 11, 2020.

61.    Prior to beginning the Spring 2020 semester, and prior to paying tuition and fees, Plaintiffs consulted that Course Catalog and enrolled in courses for the Spring 2020 semester. In

consulting the Course Catalog, Plaintiffs understood and believed that every course in which they enrolled was to be taught in-person. Plaintiffs' understanding and belief was based on the course specifying an on-campus location where the course would be taught, as well as that the courses were not listed as "Hybrid" or "Online" on the Course Catalog. Thus, the in-person nature of the course was part of the benefit of the bargain, and Plaintiffs would not have paid as much, if any, tuition and fees for the Spring 2020 semester at Louisville had they known that the course would not, in fact, be taught in-person.

36.    Defendants Scott W. Brinkman, Randall J. Bufford, Raymond Burse, John E. Chilton, Alfonso Cornish, Sandra Frazier, Diane Medley, Mary R. Nixon, Diane L. Porter, James M. Rogers, David Schultz, and John D. Smith are being sued in their official capacities as members of the Board of Trustees.

37.    Upon information and belief, the University of Louisville Board of Trustees is the governing body with ultimate authority over the operation and administration of Louisville, including the authority to set and modify tuition, as well as to enter into contracts.  Its headquarters is on the Belknap Campus of the University of Louisville in Louisville, Kentucky.

38.    The University of Louisville is a public university in the Commonwealth of Kentucky, headquartered at Louisville, Kentucky.

## **CLASS ACTION ALLEGATIONS**

39.    Plaintiff brings this matter on behalf of herself and those similarly situated. As detailed in this Complaint, Defendants failed to provide the in-person education services the Plaintiff and Class paid tuition and fees to receive during the Spring Semester 2020.

40.    Plaintiff and the Class were impacted by and damaged by this misconduct.

41.    Accordingly, this action is ideally situated for class-wide resolution.

15

42.    The Class is defined as all individuals who paid tuition and fees to attend the University to receive in-person educational services, experiences, and opportunities during the semesters affected by COVID-19 but had their educational experiences and class(es) moved to online only learning. ("Class").

43.    The Class is properly brought and should be maintained as a class action under FRCP 23, as it satisfies the class action prerequisites of numerosity, commonality, typicality, and adequacy because:

44.    <u>Numerosity</u>: Class Members are so numerous that joinder of all members is impracticable. Based on enrollment reports, Plaintiff believes that there are approximately 22,684 Class Members described above who have been damaged by Defendants breach of contract.

45.    <u>Commonality</u>: The questions of law and fact common to the Class Members which predominate over any questions which may affect individual Class Members include, but are not limited to:

    a.  Whether Defendants accepted money from Plaintiff and Class Members in exchange for a promise to provide services;

    b.  Whether Defendants provided those services as bargained for;

    c.  Whether Plaintiff and the Class Members are entitled to a pro-rata portion of the tuition and fees paid for services that were not provided; and

    d.  Whether Defendants were unjustly enriched.

46.    <u>Typicality</u>: Plaintiff is a member of the Class. Plaintiff's claims are typical of the claims of each Class Member in that every member of the Class was subject to Defendants breach of contract, unjust enrichment and conversion. Plaintiff are entitled to relief under the same causes of action as the other Class Members.

47.    <u>Adequacy</u>: Plaintiff is an adequate Class representative because her interests do not

conflict with the interests of the Class Members she seeks to represent; her claims are common to all members of the Class and she has a strong interest in vindicating her rights; she has retained counsel competent and experienced in complex class action litigation and they intend to vigorously prosecute this action. Plaintiff has no interests which conflict with those of the Class. The Class Members' interests will be fairly and adequately protected by Plaintiff and her counsel. Defendants have acted in a manner generally applicable to the Class, making relief appropriate with respect to Plaintiff and the Class Members. The prosecution of separate actions by individual Class Members would create a risk of inconsistent and varying adjudications.

48.    The Class is properly brought and should be maintained as a class action under FRCP 23 because a class action is superior to traditional litigation of this controversy. Common issues of law and fact predominate over any other questions affecting only individual members of the Class. The Class issues fully predominate over any individual issue because no inquiry into individual conduct is necessary; all that is required is a narrow focus on Defendants' deceptive and unjust practices.

49.    In addition, this Class is superior to other methods for fair and efficient adjudication of this controversy because, *inter alia:*

50.    Superiority: A class action is superior to the other available methods for the fair and efficient adjudication of this controversy because:

    a. The joinder of thousands of individual Class Members is impracticable, cumbersome, unduly burdensome, and a waste of judicial and/or litigation resources;

    b. The individual claims of the Class Members may be relatively modest compared with the expense of litigating the claim, thereby making it impracticable, unduly burdensome, and expensive-if not totally impossible-to justify individual actions;

c.  When Defendants' liability has been adjudicated, all Class Members' claims can be determined by the Class and administered efficiently in a manner far less burdensome and expensive than if it were attempted through filing, discovery, and trial of all individual cases;

d.  This class action will promote orderly, efficient, expeditious, and appropriate adjudication and administration of Class claims;

e.  Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action;

f.  This class action will assure uniformity of decisions among Class Members;

g.  The Class is readily definable and prosecution of this action as a class action will eliminate the possibility of repetitious litigation;

h.  Class Members' interests in individually controlling the prosecution of separate actions are outweighed by their interest in efficient resolution by single class action; and

i.  It would be desirable to concentrate in this single venue the litigation of all plaintiffs who were induced by Defendants' deceptive and unjust practices.

51.  Accordingly, this Class is properly brought and should be maintained as a class action under FRCP 23 because questions of law or fact common to Class Members predominate over any questions affecting only individual members, and because a class action is superior to other available methods for fairly and efficiently adjudicating this controversy.

52.  Plaintiff and the Class can maintain this action as a class action under FRCP 23.

**FIRST CAUSE OF ACTION**
**BREACH OF CONTRACT**
**(On Behalf of Plaintiff and All Class Members)**

53.  Plaintiff repeats and re-alleges the factual allegations above, as if fully alleged herein.

54.  Plaintiff brings this claim individually and on behalf of the members of the Class.

55.  Plaintiff and Class members entered into binding contracts with Defendants by accepting Defendants' offer to register for on-campus classes in accordance with the terms of the

Catalogs, Defendants' publications, and Defendants' usual and customary practice of providing on-campus courses.

56.    Defendants offered in-person and on-campus educational services to Plaintiff and similarly situated students through the application process, the admission process, enrollment process, registration process, and payment process, including through numerous documents.[9]

57.    The language on the University's website, the Student Financial Responsibility Agreement, Catalogs, acceptance letters and in other materials provided to students promising in-person instruction, campus facilities, services, and resources were incorporated as terms of the contract. That is, at the time of contract, the parties had the reasonable expectation that, in exchange for tuition and fee payments, Defendants would provide Plaintiff and Class members with an on-campus education. The nature of the instruction provided by the University at the time Plaintiff and Class members enrolled (i.e., in-person classroom instruction) as well as the facilities and resources offered by the University were and are material terms of the bargain and contractual relationship between students and Defendants.

58.    Under their contracts with Defendants, and per Defendants' usual and customary practice of providing on-campus courses, Plaintiff and Class members registered for on-campus courses and paid Defendants' tuition and/or fees for Defendants to provide in-person instruction and access to Defendants' facilities.

59.    Plaintiff and Class members have fulfilled all requirements of their mutually agreed contracts, having followed the Catalogs' policies, procedures, and requirements for registering and paying for on-campus courses and access to on-campus facilities and services. Plaintiff and Class members have paid Defendants for all financial assessments starting in the Spring 2020 semester.

---

[9] Including documents upon information and belief that are in the sole possession custody and control of Defendant.

60.    Defendants have breached its contract with Plaintiff and the Class by failing to provide the promised in-person and on-campus live education as well as the services and facilities to which the Mandatory Fees pertained throughout the Spring 2020 semester, yet has retained monies paid by Plaintiff and the Class for a live in-person education and access to these services and facilities during these semesters.

61.    Defendants' failure to provide in-person instruction and shutdown of the university facilities amount to a material breach of the contracts.

62.    Plaintiff and the members of the Class have therefore been denied the benefit of their bargain.

63.    Plaintiff and the members of the Class have suffered damage as a direct and proximate result of the Defendants' breach in the amount of the prorated portion of the tuition and Mandatory Fees they each paid during the portion of time the semesters affected by Covid-19 in which in-person classes were discontinued and facilities were closed by Defendants.

64.    Plaintiff and Class members are entitled to an award of money damages or partial restitution in an amount to be determined at trial as redress for Defendants' breach, including but not limited to prorated reimbursement of the tuition, fees, and other expenses for services that Defendants failed and continues to fail to deliver fully.

65.    Defendants are required to perform under the contract and COVID-19 does not excuse such performance. Even if performance were excused or impossible, Defendants would nevertheless be required to return the funds received for services and/or goods that it did not provide.

66.    Therefore, Defendants should be required to return pro-rata shares of the tuition and fees paid by Plaintiff and Class Members that related to services that were not provided for

after the University shut down on or around March 11, 2020

WHEREFORE, Plaintiff demand judgment for monetary damages in the amount of the total tuition and fees wrongfully paid by Plaintiff and Class Members, together with interest and costs and an award of attorney's fees as permitted pursuant to applicable law.

## SECOND CAUSE OF ACTION
## COMMON LAW UNJUST ENRICHMENT
### (On Behalf of Plaintiff and All Class Members in the Alternative)

67.     Plaintiff incorporate all allegations previously made in paragraphs 1 through 52 herein.

68.     Plaintiff, on behalf of herself and other members of the Class, bring this equitable common law claim for unjust enrichment in the alternative, should there be no remedy at law or express contract between Plaintiff and the Defendants.

69.     Plaintiff and members of the Class conferred a benefit on University of Louisville in the form of tuition and fees paid for the benefit of an in-person and on-campus live education and the services and facilities to which the fees pertained.  The payment of tuition and fees for the semester were intended to provide these benefits to Plaintiff and the members of the Class throughout the entire semester.

70.     University of Louisville appreciated the benefit and have retained the full benefit of the tuition and fees payments by Plaintiff and the members of the Class for the semester, yet has failed to provide the quality of education and services and facilities for which tuition and the fees were paid, including those for an in-person and on-campus live education, and access to the University's services and facilities.

71.     Plaintiff and the class were not able to access such facilities or services remotely.

72.     Instead, University of Louisville provided only the benefits and education similar

to those provided to online-only students, who pay a significantly lower rate for such benefits and education.

73.    University of Louisville retention of all of the tuition and fees paid by Plaintiff and members of the Class during the period of time the University was closed, and Plaintiff and the members of the Class have been denied an in-person and on-campus live education and access and the services and facilities for which the fees were paid, is unjust and inequitable under the circumstances.

74.    The costs incurred for having an online only program is significantly lower than the overhead needed to provide classes and services on campus. This is evinced by the significantly lower tuition and fees paid by students enrolled in the online programs at University of Louisville that offer the same.

75.    Allowing Louisville to retain the tuition and fees paid for in-person on campus education and experiences, after reducing the benefit provided and the costs incurred by University of Louisville, unjustly enriches the Defendants.

76.    The circumstances render University of Louisville retention of the benefit to them inequitable and unfair unless the University return the monies paid by Plaintiff and Class Members.

77.    Accordingly, University of Louisville should return the prorated portion of the tuition and fees that Plaintiff and the Class members  each paid equal to the reduction in benefit for education and services during remainder of the Spring 2020 semester when in-person and on-campus live education, and access to the Louisville's services and facilities were unavailable.

WHEREFORE, Plaintiff demand judgment for monetary damages in the amount of the total tuition and fees wrongfully paid by Plaintiff and Class Members, together with interest and costs and an award of attorney's fees as permitted pursuant to applicable law.

## DEMAND FOR JURY TRIAL

78.    Plaintiff demand a trial by jury on all issues.

## DEMANDS FOR RELIEF

**WHEREFORE,** Plaintiff, on behalf of herself and the Class, pray for judgment as follows:

(a)    Declaring this action to be a proper class action and certifying

Plaintiff as the representatives of the Class under KEN. R. CIV. P. 23;

(b)    Awarding monetary damages, including damages;

(c)    Awarding punitive and treble damages;

(d)    Awarding Plaintiff and Class Members their costs and expenses incurred in this

action, including a reasonable allowance of attorney's fees for Plaintiff's

attorneys and experts, and reimbursement of Plaintiff's expenses; and

(e) Granting such other and further relief as the Court may deem just and proper.

Respectfully submitted,

/s/Jessica Winters
Jessica Winters, Esq.
The Winters Law Group LLC
432 S. Broadway, Suite B
Lexington, KY
40508
*Attorney for Plaintiff*

**THE SULTZER LAW GROUP, P.C.**
Benjamin R. Zakarin, Esq..

zakarinb@thesultzerlawgroup.com
85 Civic Center Plaza, Suite 104
Poughkeepsie, New York 12601
Telephone: (854) 705-9460
(*Pro Hac Vice Forthcoming*)


&

**LEEDS BROWN LAW, P.C.**
Michael A. Tompkins, Esq.
Brett R. Cohen, Esq.
One Old Country Road, Suite 347
Carle Place, NY 11514
(516) 873-9550
mtompkins@leedsbrownlaw.com
bcohen@leedsbrownlaw.com
(*Admitted Pro Hac Vice*)

*Counsel for Plaintiff and the Putative Class*


## <u>CERTIFICATE OF SERVICE</u>

I, Jessica Winters, hereby certify that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system on this, the 26 of March, 2021, upon the following:

Alina Klimkina
Donna K. Perry
DINSMORE & SHOHL LLP 101 S. Fifth St.,
Suite 2500
 Louisville, KY
40202
T: (502) 540-2300 F: (502) 585-2207
donna.perry@dinsmore.com
alina.klimkina@dinsmore.com
Counsel for Defendants

Jason Sultzer Jeremy Francis
The Sultzer Law Group, P.C.
85 Civic Center Plaza, Suite 200
Poughkeepsie, NY 12601
T: (845) 483-7100
sultzerj@thesultzerlawgroup.com
francisj@thesultzerlawgroup.com
Michael A. Tompkins

Brett R. Cohen
Leeds Brown Law, P.C.
One Old Country Road, Suite 347
Carle Place, NY 11514
T: (516) 873-9550
mtompkins@leedsbrownlaw.com
bcohen@leedsbrownlaw.com
Counsel for Plaintiff

/s/ Jessica Winters
Counsel for Plaintiffs